UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BOISEY CALDWELL,

                         Plaintiff,

               -v.-

OFFICER GERMAN GERONIMO,

                         Defendant.

19 Civ. 8253 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

On September 2, 2019, Defendant German Geronimo, an officer with the New York City Police Department (the "NYPD"), arrested Plaintiff Boisey Caldwell for fishing in Morningside Park contrary to park regulations.  During the arrest, Defendant, using a disputed amount of force, brought Plaintiff to the ground and caused Plaintiff to injure his chin.  Plaintiff, proceeding *pro se*, then sued Defendant under 42 U.S.C. § 1983 for violating Plaintiff's constitutional rights.  Both parties have moved for summary judgment.  For the reasons that follow, the Court denies summary judgment to both parties on Plaintiff's excessive force claim, and grants summary judgment to Defendant on the false arrest and equal protection claims suggested by Plaintiff's pleadings.

## BACKGROUND[1]

### A.    Factual Background

Plaintiff has fished in Morningside Park since he was young.  (Def. 56.1 ¶ 1).  On an unknown date before September 2, 2019, Plaintiff was fishing in a pond in Morningside Park when a couple walking by told Plaintiff that he could not fish in the pond and the man threw Plaintiff's bucket of fish back into the pond.  (*Id.* at ¶ 2; Pl. Dep. 41:11-42:22).  Sometime thereafter, but before Plaintiff's arrest on September 2, 2019, Plaintiff noticed that a sign had been placed by the pond in Morningside Park stating that fishing in the pond was prohibited.  (Def. 56.1 ¶ 3; Pl. Dep. 41:2-7).

On September 2, 2019, Plaintiff traveled to Morningside Park in order to catch fish to feed his turtles.  (Def. 56.1 ¶ 4).  Plaintiff took with him a six-foot-long fishing net, a bucket, and a portable radio.  (*Id.* at ¶¶ 5, 11).  Upon arriving at the pond, Plaintiff began catching fish in his net.  (*Id.* at ¶ 7).  Defendant Geronimo and non-party NYPD officer Jessica Gutierrez entered Morningside Park in a marked NYPD car and drove towards Plaintiff and the

---

[1]    The facts in this Opinion are drawn primarily from Defendant's Statement of Material Facts pursuant to S.D.N.Y. Local Civil Rule 56.1 ("Defendant's 56.1 Statement" or "Def. 56.1" (Dkt. #129)) and the exhibits attached to the Declaration of Qiana Smith-Williams in Support of Defendant's Motion for Summary Judgment (Dkt. #130), including Plaintiff's deposition taken on January 21, 2021 (*id.*, Ex. A ("Pl. Dep.")), body-worn camera ("BWC") footage taken by non-party NYPD officer Jessica Gutierrez (*id.*, Ex. C ("Gutierrez BWC")), and BWC footage taken by Defendant Geronimo (*id.*, Ex. F ("Geronimo BWC")).

For ease of reference, the Court refers to Defendant's Memorandum of Law in Support of His Motion for Summary Judgment as "Def. Br." (Dkt. #131).  Plaintiff's initial Memorandum of Law in Support of His Motion for Summary Judgment is referred to as "Pl. Br." (Dkt. #106).  Because Plaintiff has submitted numerous supplemental letters since filing his initial motion for summary judgment, the Court refers to those letters by docket number where relevant.

pond. (*Id.* at ¶ 8). Plaintiff was still fishing when Defendant and Gutierrez arrived at the pond. (*Id.* at ¶ 9). Defendant exited the car first, followed by Gutierrez. (*Id.* at ¶ 10). Plaintiff was holding his fishing net and the bucket containing the fish he had caught. (*Id.* at ¶ 11; Pl. Dep. 49:9-14).

Defendant walked up to Plaintiff, told Plaintiff that he could not fish in the pond, and pointed out a sign prohibiting fishing near blooms or surface scum. (Def. 56.1 ¶¶ 12-13, 16). Defendant also directed Plaintiff to return the fish in the bucket to the pond. (*Id.* at ¶ 15). Plaintiff responded that the sign had only recently been installed and, further, that it depicted a person fishing with a rod rather than a net and thus did not apply to him. (*Id.* at ¶ 17; Pl. Dep. 51:21-22, 52:1-4). Instead of emptying his bucket of fish back in the pond, Plaintiff attempted to walk away with the partially filled bucket. (Def. 56.1 ¶¶ 18, 20; Gutierrez BWC at 00:06). Defendant moved to block Plaintiff from leaving and Plaintiff was unable to get by. (Def. 56.1 ¶¶ 19, 21; Gutierrez BWC at 00:07-00:08). Defendant reached for Plaintiff's bucket, but Plaintiff refused to let go. (Def. 56.1 ¶¶ 22-23; Pl. Dep. 56:16-17, 56:21-22, 58:4-6, 59:11-15; Gutierrez BWC at 00:08-00:09). The contest over the bucket resulted in water and fish spilling onto the ground. (Def. 56.1 ¶ 24; Gutierrez BWC at 00:09-00:10).

Defendant and Officer Gutierrez grabbed Plaintiff's arms and pulled them behind Plaintiff's back. (Def. 56.1 ¶¶ 25-26; Gutierrez BWC at 00:11-00:14). Defendant moved Plaintiff a short distance away from the pond to a waist-high fence. (Def. 56.1 ¶ 27; Gutierrez BWC at 00:13-00:17). While Defendant was

attempting to restrain Plaintiff, Defendant brought Plaintiff to the ground and Plaintiff hit his chin on the pavement.  (Def. 56.1 ¶¶ 28-29; Gutierrez BWC at 00:17-00:20).[2]  Defendant kneeled on Plaintiff's back and pulled Plaintiff's left arm behind his back.  (Def. 56.1 ¶¶ 30-31; Gutierrez BWC at 00:20-00:28).  Gutierrez directed Plaintiff to put his right arm behind his back, and when Plaintiff did not comply, Gutierrez grabbed Plaintiff's right arm and pulled it behind him.  (Def. 56.1 ¶¶ 32-33; Gutierrez BWC at 00:33-00:48; Geronimo BWC at 00:10-00:23).  Defendant and Gutierrez then handcuffed Plaintiff. (Def. 56.1 ¶¶ 34; Gutierrez BWC at 00:48-00:58).

Approximately a minute and a half later, Defendant lifted Plaintiff to his feet.  (Def. 56.1 ¶ 35; Gutierrez BWC at 2:34-2:39; Geronimo BWC at 2:12-2:18).  Plaintiff had blood on his chin.  (Def. 56.1 ¶ 36; Geronimo BWC at 2:54-3:01).  Several passersby who had gathered in the vicinity while Defendant and Gutierrez were attempting to arrest Plaintiff picked up fish from the ground. (Def. 56.1 ¶¶ 38, 40; Gutierrez BWC at 2:43-3:27).  Defendant walked Plaintiff to the officers' car and placed him in the back seat.  (Def. 56.1 ¶ 37; Geronimo BWC at 3:03-3:39).  Plaintiff was transported to the 26th Precinct in the officers' car, and subsequently was taken by ambulance to St. Luke's Hospital

---

[2]    Officer Gutierrez's BWC was blocked during the brief period when Defendant and Plaintiff went to the ground (*see* Gutierrez BWC at 00:17-00:19), and thus the Court is unable to determine from the BWC footage whether Defendant deliberately pushed Plaintiff to the ground or instead merely fell to the ground with Plaintiff.  The parties dispute the amount of force used.  (*Compare* Pl. Br. 1-2 (alleging that Defendant "tackled" Plaintiff), *with* Def. 56.1 ¶ 28 ("Defendant Geronimo and Plaintiff fell to the ground."), *and with* Def. Br. 7 ("Defendant Geronimo either fell on plaintiff or, alternatively, used a minimal amount of force to take him to the ground in order to handcuff him, but he did not tackle him.")).

for treatment for the injury to his chin.  (Def. 56.1 ¶¶ 41, 44).  Plaintiff had a

1.5 cm laceration to his chin and received three sutures.  (*Id.* at ¶¶ 45-46).

Plaintiff is not claiming to have suffered any other injuries during the incident.

(*Id.* at ¶ 48; Pl. Dep. 82:4-19).

Plaintiff was charged with failure to comply with a sign, in violation of

N.Y.C. Mun. Code, Charter and Rules ("N.Y.C. Rules"), tit. 56, § 1-03(c)(3), and

disorderly conduct in violation of N.Y. Penal Law § 240.20(7).  (Def. 56.1 ¶ 42).

Plaintiff ultimately was not prosecuted on the charges.  (*See* Pl. Dep. 125:5-6;

*see also* Dkt. #142 at 2).

## B.    Procedural Background

Plaintiff filed the Complaint in this matter on September 4, 2019,

bringing claims against the New York City Law Department and Officer German

Geronimo, originally misidentified as Geronimo German.  (Dkt. #2).  By Order

dated November 13, 2019, the Court dismissed the claims against the New

York City Law Department in accordance with N.Y.C. Charter ch. 17, § 396.

(Dkt. #5).  Officer Geronimo filed his answer on February 5, 2020 (Dkt. #13),

which the Court deemed timely (*see* Dkt. #32).  On March 25, 2020, the Court

held an initial pretrial conference with the parties (*see* Minute Entry for

March 25, 2020), and subsequently entered a Civil Case Management Plan and

Scheduling Order (Dkt. #31).  On June 9, 2020, the Court granted Defendant's

request for an extension of time to complete discovery (Dkt. #44), and on

June 10, 2020, it entered a revised Civil Case Management Plan and

Scheduling Order (Dkt. #46).

On August 21, 2020, due to Plaintiff's noncompliance with numerous Court orders, failure to participate in discovery, and failure to appear for a telephonic conference, the Court ordered Plaintiff to show cause why the case should not be dismissed for failure to prosecute and failure to comply with Court orders. (Dkt. #63). The Court received Plaintiff's response on September 2, 2020. (Dkt. #69). Defendant filed a second request for an extension of time to complete discovery on September 15, 2020 (Dkt. #73), which request the Court discussed with the parties during a conference held on October 1, 2020 (*see* Minute Entry for October 1, 2020). On October 16, 2020, the Court denied Plaintiff's request for certain records belonging to the City of New York regarding historical use of force by NYPD officers due to the irrelevance of such records to Plaintiff's extant claims. (*See* Dkt. #86).

On October 27, 2020, the Court received two letters from Plaintiff (Dkt. #91-92), which letters the Court construed as a motion for leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2). The Court ordered Defendant to respond to the motion (Dkt. #94), which Defendant did on November 19, 2020 (Dkt. #95). On November 30, 2020, the Court issued an order (i) denying Plaintiff's motion for leave to amend to add a municipal liability claim due to the inadequacy and conclusory nature of Plaintiff's allegations; (ii) denying reconsideration of its denial of Plaintiff's request for the City's use of force records; and (iii) granting Defendant's request to further extend the discovery deadline. (Dkt. #96). The Court granted an additional discovery extension on January 14, 2021. (Dkt. #105).

In separate letters dated February 1, 2021, the parties notified the Court that they both intended to move for summary judgment. (Dkt. #111-112). On February 8, 2021, the Court set a briefing schedule for the motions and accepted as Plaintiff's opening submission a document filed on January 14, 2021. (Dkt. #113 (accepting document previously docketed at entry 106)). The Court received supplemental submissions from Plaintiff on February 9 (Dkt. #114), February 24 (Dkt. #119), February 25 (Dkt. #120), and March 2, 2021 (Dkt. #123-125). On March 3, 2021, the Court ordered Plaintiff to refrain from filing any further letters and to consolidate his arguments in his response to Defendant's motion for summary judgment. (Dkt. #126). Defendant filed his opening papers on March 10, 2021. (Dkt. #127-132). The Court received additional letters from Plaintiff on March 10 (Dkt. #133-134), March 16 (Dkt. #135), April 5 (Dkt. #136), April 14 (Dkt. #137), and August 9, 2021 (Dkt. #142). Defendant filed his reply memorandum on May 10, 2021. (Dkt. #138). The Court considers both parties' motions now fully briefed and ripe for resolution.

## DISCUSSION

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322

(1986).[3]  A fact is "material" if it "might affect the outcome of the suit under the governing law," and it is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor."  *Vt. Teddy Bear Co., Inc.* v. *1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact."  *CILP Assocs., L.P.* v. *PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (internal quotation marks and alteration omitted).  If the movant has met its burden to show that no genuine factual dispute exists, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" and, toward that end, "must come forward with specific facts showing that there is a *genuine issue for trial.*"  *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks and citations omitted).  The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the

---

3    The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) … chang[es] only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination.").  This Court uses the post-amendment standard but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

facts to overcome a motion for summary judgment." *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

In deciding a motion for summary judgment, "a district court generally should not weigh evidence or assess the credibility of witnesses." *Rojas* v. *Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, "reliable objective evidence," such as a video recording, "may speak for itself" and negate facts proffered by the parties. *Marcavage* v. *City of New York*, 689 F.3d 98, 110 (2d Cir. 2012).

This Court's task in this case has been complicated by Plaintiff's failure to provide a statement of material facts in support of his motion for summary judgment, as required by Local Civil Rule 56.1, or to respond to Defendant's Rule 56.1 Statement. *See* S.D.N.Y. Local Civil Rule 56.1(a), (c). "*Pro se* litigants are … not excused from meeting the requirements of Local Rule 56.1." *Wali* v. *One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (citing *Vt. Teddy Bear*, 373 F.3d at 246). Nevertheless, the Court retains discretion "to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Id.* To be fair to both parties, the Court has conducted its own thorough review of the record. *See id.* ("[T]he Court may not rely solely on the statement of undisputed facts contained in [a] party's Rule 56.1 statement; it also must be satisfied that the … party's assertions are supported by the record." (citing *Vt. Teddy Bear*, 373 F.3d at 244)).

**B.    Analysis**

**1.    Plaintiff's Operative Claims**

"[42 U.S.C. § 1983] creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *City of Oklahoma City* v. *Tuttle*, 471 U.S. 808, 816 (1985).  There are two essential elements to any claim raised under Section 1983: "[i] the defendant acted under color of state law; and [ii] as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis* v. *City of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

This Court is mindful that it must "afford a special solicitude" to Plaintiff as a *pro se* litigant, *Tracy* v. *Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), and that Plaintiff's pleadings are "to be construed 'liberally to raise the strongest arguments'" they suggest, *McCray* v. *Lee*, 963 F.3d 110, 116 (2d Cir. 2020) (quoting *Walker* v. *Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).  Accordingly, the Court finds that Plaintiff's Complaint can be read to state claims under Section 1983 for use of excessive force and false arrest.  (*See* Dkt. #2 at 1 ("Officer Geronimo … used excessive force unnecessarily[.]"); *id.* at 2 ("[Geronimo] should be ordered to pay for causing me to have these stitches and for cuffing me when he had no warrant and essentially no purpose under the color of law[.]")).  And looking to Plaintiff's numerous submissions filed prior to the entry of the Civil Case Management Plan on March 25, 2020, to the extent those may be treated as supplemental pleadings, the Court discerns allegations suggesting an equal protection claim as well.  (*See* Dkt. #10 at 1 (alleging

Geronimo acted "based on discrimination because he had no cause to arrest");
Dkt. #23 at 4 ("I was judged by the color of my skin and [Geronimo] presumed
that he would be right to abuse me like he did.")).  The Court resolves the
parties' summary judgment motions based on these three claims.[4]

### 2. The Court Denies Both Motions for Summary Judgment as to Plaintiff's Excessive Force Claim

#### a. Reasonableness of Force Used

Plaintiff alleges that he was subjected to excessive force when Defendant
grabbed him, took him to the ground, and handcuffed him.  (*See* Dkt. #2 at 1
(alleging that Defendant "jumped upon my back" and "forced my chin into the
ground"); *id.* at 2 (alleging that Defendant "should be ordered to pay for causing
me to have these stitches and for cuffing me when he had no warrant and
essentially no purpose under the color of law")).

"The Fourth Amendment, which protects against unreasonable seizures,
governs a claim that excessive force was used in connection with an arrest."
*Mickle* v. *Morin*, 297 F.3d 114, 120 (2d Cir. 2002) (citing *Graham* v. *Connor*, 490
U.S. 386, 388, 391-95 (1989)).  "Not every push or shove, even if it may later
seem unnecessary in the peace of a judge's chambers, violates the Fourth
Amendment."  *Graham*, 490 U.S. at 396 (internal quotation marks and citation
omitted).  That said, "even a valid arrest, made with probable cause, may lead

---

[4]     The Court previously dismissed Plaintiff's allegations against the City of New York for
failing to state a viable claim for municipal liability under *Monell* v. *Department of Social
Services of City of New York*, 436 U.S. 658 (1978).  (*See* Dkt. #5; *see also* Dkt. #86
(denying Plaintiff's overbroad discovery requests for NYPD records); Dkt. #96 (denying
Plaintiff leave to amend to add a *Monell* claim based on vague and conclusory
allegations)).  The Court will not revisit that decision again and thus addresses here
only those claims Plaintiff has pleaded against Defendant Geronimo individually.

to an excessive force finding where officers act unreasonably in physically restraining a suspect." *Mesa* v. *City of New York*, No. 09 Civ. 10464 (JPO), 2013 WL 31002, at *18 (S.D.N.Y. Jan. 3, 2013).

"Because 'the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it,' determining whether the amount of force an officer used is reasonable 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Cugini* v. *City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) (quoting *Graham*, 490 U.S. at 396). Courts are to pay "careful attention to the facts and circumstances of each particular case, including [i] the severity of the crime at issue, [ii] whether the suspect poses an immediate threat to the safety of the officers or others, and [iii] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee* v. *Garner*, 471 U.S 1, 8-9 (1985)). "In this context, the reasonableness question is whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Mickle*, 297 F.3d at 120 (quoting *Graham*, 490 U.S. at 397).

Defendant argues that his use of force was minimal and objectively reasonable, because (i) "Plaintiff posed an immediate threat" to the officers, (ii) "Plaintiff was non-compliant from the inception of the interaction between Defendant Geronimo and Plaintiff," (iii) "Plaintiff attempted to evade and/or

resisted arrest," and (iv) Defendant's use of force caused only a *de minimis* injury to Plaintiff. (Def. Br. 7-9). Defendant also argues that Plaintiff's allegation that Defendant used excessive force "is solidly refuted by the body-worn camera ('BWC') footage of the incident," and that the Court should not credit Plaintiff's testimony where it is belied by the video footage. (*Id.* at 7 (citing *Zellner* v. *Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007))).

Based upon the *Graham* factors, the Court finds that the record does not support either party's position beyond reasonable dispute. *First*, Plaintiff was arrested for failure to comply with a park sign and disorderly conduct. (Def. 56.1 ¶ 42). These are hardly "severe" crimes and there is no evidence Plaintiff put anyone else's safety at risk. *Second*, while the BWC footage does show that Plaintiff was carrying his fishing pole and bucket when Defendant approached him, Plaintiff did not brandish the pole or otherwise act in a physically aggressive manner towards Defendant. (*See* Gutierrez BWC at 00:00-00:08). *Third*, Plaintiff did attempt to walk around Defendant and did not want to let go of his bucket, but it is not clear from the BWC footage what, if anything, Defendant said to Plaintiff as Plaintiff attempted to walk away. (*See id.* at 00:06-00:08). For example, the BWC footage does not reflect, nor is there any allegation, that Defendant told Plaintiff that he was under arrest and not free to leave. Instead, the video footage shows that when Plaintiff attempted to walk away from Defendant, Defendant escalated the situation by forcefully grabbing Plaintiff's bucket and then his arms (*id.* at 00:08-00:10), pulled Plaintiff's arms behind him and pushed him over to a short fence (*id.* at 00:11-00:17), brought

Plaintiff to the ground (*id.* at 00:17-00:20), and then knelt on Plaintiff's back while attempting to handcuff him (*id.* at 00:20-00:48).  Plaintiff disputes that he resisted arrest (Pl. Dep. 116:21-22, 117:16-17, 119:1), and the Court does not find the BWC footage to be conclusive as to whether Plaintiff struggled against Defendant's efforts to restrain him.  *Finally*, while the Court agrees that Plaintiff's injury was not severe, "the extent of [a plaintiff's] injuries, while relevant to the excessive force inquiry, is not dispositive." *Frost* v. *N.Y.C. Police Dep't*, 980 F.3d 231, 255 (2d Cir. 2020).

The Court's task on summary judgment is to determine "whether a jury, instructed as to the relevant factors, could reasonably find that the force used was excessive." *Brown* v. *City of New York*, 798 F.3d 94, 103 (2d Cir. 2015). Here, the Court concludes that it cannot find that Defendant used excessive force as a matter of law, but that a reasonable jury could so find as a matter of fact.  *See, e.g.*, *id.* at 103 ("Even though most of the facts concerning the application of force are undisputed, a jury will have to decide whether Fourth Amendment reasonableness was exceeded when Brown was taken to the ground after refusing to put her hands behind her back and when officers struggled with her on the ground[.]"); *Gersbacher* v. *City of New York*, No. 14 Civ. 7600 (GHW), 2017 WL 4402538, at *11 (S.D.N.Y. Oct. 2, 2017) ("[B]ecause a dispute exists as to the extent of the injuries that Gersbacher sustained, the extent of his resistance, and the amount of force Inspector Winski used in arresting him, a reasonable jury could find that Inspector Winski's use of force was objectively unreasonable."); *Cox* v. *Fischer*, 248 F. Supp. 3d 471, 482

14

(S.D.N.Y. 2017) ("[A] jury could reasonably find that Officer Murphy's actions were unreasonable, where Cox had allegedly committed only a minor parole violation, did not pose any physical threat to officers or others, and did not physically resist or threaten any officer on the scene.").  Accordingly, neither Defendant nor Plaintiff is entitled to summary judgment because there is a triable issue of fact concerning the objective reasonableness of the force Defendant used against Plaintiff.

### b.    Qualified Immunity

Defendant argues, in the alternative, that he is entitled to qualified immunity because "it is not clearly established that taking a resisting and non-compliant arrestee to the ground in order to place him in handcuffs is objectively unreasonable." (Def. Br. 16).  The Second Circuit has noted that "qualified immunity protects officers from the sometimes hazy border between excessive and acceptable force."  *Kerman* v. *City of New York*, 261 F.3d 229, 239 (2d Cir. 2001) (internal quotation marks and alterations omitted).  However, as relevant here, it is well established in the Second Circuit "that the use of entirely gratuitous force is unreasonable and therefore excessive." *Tracy*, 623 F.3d at 99 n.5; *accord Jones* v. *Treubig*, 963 F.3d 214, 226 (2d Cir. 2020); *see also Cox*, 248 F. Supp. 3d at 482 (explaining that Second Circuit caselaw makes clear "that it is unreasonable under the Fourth Amendment for an officer to use substantial force against an arrestee suspected of a minor offense who refuses to raise his arms but does not physically attack an officer, attempt to flee, or make any threatening gesture").  Thus, qualified immunity

may, but will not necessarily, provide a defense to this sort of excessive force claim.

"In light of the fact-specific nature of the inquiry on an excessive force claim, granting summary judgment against a plaintiff on such a claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Lennox* v. *Miller*, 968 F.3d 150, 155 (2d Cir. 2020) (quoting *Rogoz* v. *City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015)). As discussed above, the Court concludes that a reasonable factfinder could find that Plaintiff did not pose a threat to Defendant and did not understand, at the time he attempted to walk past Defendant, that he was not free to leave, and that Defendant's aggressive action to restrain Plaintiff was clearly unwarranted. Consequently, the Court declines to grant Defendant summary judgment based on a qualified immunity defense. *See id.* at 157 (affirming denial of qualified immunity where "a reasonable jury could find that the force used by [the defendant police officer] was significant and that [the plaintiff] was not resisting when such force was used"); *Gersbacher*, 2017 WL 4402538, at *12 (denying qualified immunity "because facts material to a determination of the reasonableness of [the defendant officer's] actions are in dispute"); *Cox*, 248 F. Supp. 3d at 484 (declining to grant qualified immunity to defendant parole officer).

### 3. The Court Grants Defendant's Motion for Summary Judgment as to Plaintiff's False Arrest Claim

During the October 1, 2020 conference, Plaintiff seemed to disavow a false arrest claim. (Def. 56.1 ¶ 49; Dkt. #82 ("Oct. 1, 2020 Tr.") at 3:16-18 ("I

16

was tackled for no reason.  That's excessive force.  That's not an arrest.")).
However, Plaintiff's other statements at the conference evince a
misunderstanding about the nature of a potential false arrest claim.  In
Plaintiff's view, he was never under arrest because Defendant neither told him
that he was under arrest nor read him his *Miranda* rights, and thus there
could be no "false arrest."  (Oct. 1, 2020 Tr. 4:1-12; *see also id.* at 5:10-12 ("I
don't have an arrest.  I didn't go to court.  When you have an arrest, you
usually have to appear in court[.]")).  Nevertheless, when affording Plaintiff the
latitude he is due as a *pro se* litigant, the Court finds that Plaintiff's allegations
raise a false arrest claim.  (*See, e.g.*, Dkt. #2 at 2 (alleging that Defendant
"cuff[ed] me when he had no warrant and essentially no purpose under the
color of law"); Dkt. #10 at 1 (stating Defendant "had no cause to arrest");
Oct. 1, 2020 Tr. 4:13-18 ("I was assaulted, I was handcuffed, put in the car,
taken to the precinct, and then taken to the hospital. … [T]hey gave me a
ticket, and they told me to come to court.  I never went to court.  I wrote to the
court, and I told the court what happened, and they threw it out.")).

    To state a viable claim for false arrest under New York law, a plaintiff
must show that "[i] the defendant intended to confine plaintiff, [ii] the plaintiff
was conscious of the confinement, [iii] the plaintiff did not consent to the
confinement, and [iv] the confinement was not otherwise privileged."  *Savino* v.
*City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (quoting *Bernard* v. *United
States*, 25 F.3d 98, 102 (2d Cir. 1994)).  "Where probable cause for the arrest
exists, an arrest by a law enforcement officer is privileged."  *Marlin* v. *City of*

*New York*, No. 15 Civ. 2235 (CM), 2016 WL 4939371, at *9 (S.D.N.Y. Sept. 7, 2016) (citing *Gonzalez* v. *City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013)).  "Thus, probable cause is a complete defense to a claim for false arrest." *Id.* (citing *Simpson* v. *City of New York*, 793 F.3d 259, 265 (2d Cir. 2015)). Probable cause exists when an arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant* v. *Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  "The inquiry is limited to 'whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest.'" *Gonzalez*, 728 F.3d at 155 (quoting *Jaegly* v. *Couch*, 439 F.3d 149, 153 (2d Cir. 2006)).

It is uncontested in this case that Defendant seized Plaintiff's person, handcuffed him, and transported him to the 26th Precinct, all with Plaintiff's knowledge but without his consent.  (*See* Def. 56.1 ¶¶ 25-37, 41).  Thus, the first three prongs of a false arrest claim are satisfied.  Plaintiff's claim fails to meet the fourth requirement, however, because it is beyond reasonable dispute that Defendant had probable cause to arrest Plaintiff for, at minimum, (i) failure to comply with police directives, *see* N.Y.C. Rules, tit. 56, § 1-03(c)(1) ("No person shall fail, neglect or refuse to comply with the lawful direction or command of any member of the Police Department. … Violation of this paragraph constitutes a misdemeanor."); and (ii) failure to comply with prohibitions on signs, *see id.* § 1-03(c)(3) ("No person shall fail to comply with

or obey any instruction, direction, regulation, warning, or prohibition, written or printed, displayed or appearing on any park sign[.]").

Plaintiff admitted in his deposition that: (i) he was aware of the sign in Morningside Park prohibiting fishing in the pond (Pl. Dep. 41:2-8, 51:13-22); (ii) despite the sign, he was fishing in the pond on September 2, 2019, including at the time Defendant and Officer Gutierrez arrived on scene (*id.* at 34:1-8, 47:1-2, 51:18-13); and (iii) when Defendant approached Plaintiff, Plaintiff was carrying his bucket partially filled with water and fish that he had already caught (*id.* at 49:8-18).  Furthermore, when Defendant pointed out that the posted sign forbade fishing in the pond and directed Plaintiff to return the fish in his bucket to the pond, Plaintiff claimed the sign did not apply to him, refused to comply, and attempted to leave with the bucket.  (*Id.* at 52:1-11, 57:12-58:6).  With direct knowledge of these circumstances, Defendant had probable cause to arrest Plaintiff for failing to comply with his lawful directives and with the park's prohibition against fishing in the pond.  *See Marlin*, 2016 WL 4939371, at *10-11 (holding that violations of New York City park rules supported probable cause to arrest); *see also People* v. *Caba*, 910 N.Y.S.2d 373, 374 (2d Dep't 2010) ("[O]nce the police officers witnessed the defendants trespassing into a park owned and operated by the City of New York, the entrance of which had a posted sign indicating that the park closed several hours earlier at dusk, they had probable cause to issue them summonses for committing a violation and/or arrest them for misdemeanors.").

Because Plaintiff has failed to raise any material dispute of fact as to whether his arrest was privileged, Defendant is entitled to summary judgment on Plaintiff's false arrest claim.

### 4. The Court Grants Defendant's Motion for Summary Judgment as to Plaintiff's Equal Protection Claim

In his summary judgment motion, Plaintiff indicates that he believes Defendant discriminated against him on the basis of race, in violation of the Equal Protection Clause of the Fourteenth Amendment.  (*See* Pl. Br. 1 ("[T]his is a matter of Racial Profiling, and Discrimination"); *id.* at 2-3 (stating that the "violations of the fourth Amendment protection in this matter" are "racially motivated")).  Defendant seeks dismissal of any equal protection claim on the grounds that (i) Plaintiff's Complaint cannot be reasonably read to state an equal protection claim, and (ii) Plaintiff has not come forward with any evidence supporting such a claim.  (Def. Br. 21).

"To prevail on an equal protection claim, 'a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'"  *Reynolds* v. *Quiros*, 990 F.3d 286, 300 (2d Cir. 2021) (quoting *Phillips* v. *Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)).  Additionally, Plaintiff must establish that "such selective treatment was based on impermissible considerations such as race[.]"  *Freedom Holdings, Inc.* v. *Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (quoting *Lisa's Party City, Inc.* v. *Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)); *see also Holden* v. *Port Auth. of N.Y. & N.J.*, No. 17 Civ. 2192 (JGK), 2021 WL 681040, at *12 (S.D.N.Y. Feb. 22, 2021).

Assuming *arguendo* that Plaintiff has pleaded an equal protection claim (*see supra* Section B.1), the Court agrees that Defendant is entitled to summary judgment due to Plaintiff's failure to come forth with any concrete evidence, as opposed to mere speculation, that Defendant harbored discriminatory intent.  Plaintiff's allegations that Defendant arrested and used force against him based, at least in part, on Plaintiff's race are wholly conclusory.  (*See* Pl. Br. 1-2, 4-5).  Plaintiff does not present any evidence that similarly situated individuals were treated differently.  For example, Plaintiff does not present any evidence that people of other races were permitted to fish at the same pond in Morningside Park.  (*See generally id.*).  This deficiency is fatal to his equal protection claim.  *See C.T.* v. *Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307, 321 (E.D.N.Y. 2016) ("[A]t the summary judgment stage, a plaintiff must present evidence comparing himself to individuals that are similarly situated in all material respects, and must show how this similarly situated individual of a different race was not subject to the same offensive conduct." (internal quotation marks and citations omitted) (quoting *Lener* v. *Hempstead Pub. Sch.*, 55 F. Supp. 3d 267, 283 (E.D.N.Y. 2014), and *Brown* v. *City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000))).  And the record contains no evidence, either direct or circumstantial, indicating that Plaintiff's race factored into Defendant's decision to arrest him.  (*See generally* Pl. Br.; Pl. Dep.).  Plaintiff's "mere speculation and conjecture is insufficient to preclude the granting of the motion."  *See Harlen Assocs.* v. *Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).  Accordingly, the Court grants Defendant's motion for

summary judgment with respect to any equal protection claim Plaintiff intended to plead.

## CONCLUSION

Plaintiff's motion for summary judgment is DENIED. Defendant's motion for summary judgment is DENIED with respect to Plaintiff's excessive force claim, and is GRANTED with respect to Plaintiff's false arrest and equal protection claims. The Clerk of Court is directed to terminate the motions at docket entries 106 and 127. The Clerk of Court is further directed to mail a copy of this Opinion and Order to Plaintiff's address of record.

The parties are hereby ORDERED to appear for a telephonic conference regarding next steps in this case on **September 30, 2021**, at **10:00 a.m**. The dial-in information is as follows: At 10:00 a.m., the parties shall call (888) 363-4749 and enter access code 5123533. Please note, the conference will not be available prior to 10:00 a.m.

SO ORDERED.

Dated:  August 27, 2021
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge